**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

In re:

**DM RECORDS, INC.**                                **Case No. 15-30368-RBR**

          **Debtor.**                                **Chapter 11 Case**
_____/


**DISCLOSURE STATEMENT FOR**
**PLAN OF REORGANIZATION**
**DATED November 19, 2015**


**MERRILL PA**
David Lloyd Merrill, Esq.
Trump Plaza Office Center
525 South Flagler Drive, Fifth Floor
West Palm Beach, Florida 33401
Phone: +1.561.877.1111
**Attorneys for DM Records, Inc.**

1

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1
    A. Overview of the Plan ...........................................................3
    B. Voting Instructions...............................................................4

II. BACKGROUND OF THE DEBTOR ..................................................................4

III. THE CHAPTER 11 CASE ...............................................................................5
    A. Commencement of the Chapter 11 Case .............................5
    B. Retained Professionals ........................................................5
    C. The Claims Process .............................................................5

IV. THE CHAPTER 11 PLAN ..............................................................................6
    A. Plan Overview.......................................................................6
    B. Unclassified Claims..............................................................6
    C. Treatment of Claims and Interests ......................................7

        1. Class 1. Allowed Secured Claim of Bank of America ......................7

        2. Class 2. Judgment Lien Claims..........................................7

        2. Class 3. Allowed General Unsecured Claims .....................8

        3. Class 4. Allowed Unsecured Administrative Convenience Class.......8

        4. Class 5. Equity Security Holders........................................9

    D. Distributions Under the Plan ................................................9

    E. Executory Contracts and Unexpired Leases ......................10

    F. Modification/Revocation of the Plan ...................................13

    G. Effect of Confirmation ........................................................13

    H. Discharge, Exculpation, Injunction, Release and Limitation of Liability .........14

    I. Retention of Jurisdiction .....................................................15

    J. Objections to Claims...........................................................17

    K. Transfers within Two Years Prior to Petition.......................17

    L. Miscellaneous Provisions ...................................................17

V. CONFIRMATION OF PLAN...........................................................................18

    A. Solicitation of Votes............................................................18

    B. Confirmation Hearing .........................................................18

2

C. Confirmation Standards .................................................................18

**VI. FUNDING AND FEASIBILITY OF THE PLAN**...........................................19

A. Funding of the Plan .......................................................................19

B. Best Interests Test and Liquidation Analysis ...............................19

C. Feasibility...................................................................................21

**VII. ALTERNATIVES TO THE PLAN**..........................................................21

**CONCLUSION** .......................................................................................22

## EXHIBIT INDEX

Exhibit A       The Plan

Exhibit B       Liquidation Analysis

Exhibit C       Projections

Exhibit D       Equity Security Holders

4

**DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN**
**PROPOSED BY DM RECORDS, INC.**

<div style="border:1px solid">

THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT
THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE
CONFIRMATION HEARING.

</div>

## I.    INTRODUCTION

DM RECORDS, INC., (hereinafter, the "Plan Proponent" or the "Debtor")
provides this Disclosure Statement (the "Disclosure Statement") to all creditors and
stockholders of the Debtor in order to permit such creditors and stockholders to make
an informed decision in voting to accept or reject the Chapter 11 Plan of Reorganization
By the Plan Proponents (the "Plan") filed on **November 19, 2015** with the United States
Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in
connection with the above-captioned case (the "Chapter 11 Case"). A copy of the
Plan is attached to this Disclosure Statement as Exhibit "A." Capitalized terms used
herein but not otherwise defined have the meanings assigned to such terms in the
Plan. Whenever the Words "include," "includes" or "including" are used in this Disclosure
Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims against or
Interests in Debtor in accordance with the requirements of section 1125 of the United
States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section
1125 of the Bankruptcy Code requires that a disclosure statement provide information
sufficient to enable a hypothetical and reasonable investor, typical of the Debtor's
creditors and stockholders, to make an informed judgment whether to accept or reject
the Plan. The Disclosure Statement may not be relied upon for any purpose other than
that described above.

THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE,
AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE
ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY
BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS
DISCLOSURE STATEMENT IN TURN IS QUALIFIED IN ITS ENTIRETY BY THE
PLAN.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR
ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE
DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON
BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL
REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL
FOR THE PLAN PROPONENTS, WHO WILL IN TURN DELIVER SUCH
INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE
APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN. ACCORDINGLY, THE PLAN PROPONENTS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING DEBTOR OR ITS FINANCIAL CONDITION IS ACCURATE OR COMPLETE. THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, THE PLAN PROPONENTS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT. THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR AND STOCKHOLDER IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

Pursuant to the Bankruptcy Code, the Plan was filed with the Bankruptcy Court on **November 19, 2015** and this Disclosure Statement was filed thereafter. The Bankruptcy Court will schedule a final hearing on approval of this Disclosure Statement and on confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Bankruptcy Court for the Southern District of Florida, United States Courthouse, 299 East Broward Blvd, Fort Lauderdale, Florida 33301. At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Merrill PA, Attn: David Lloyd Merrill, Esq., Trump Plaza Office Center, 525 South Flagler Drive, Fifth Floor, West Palm Beach, Florida, 33401, dlmerrill@merrillpa.com.

## A   Overview of the Plan

THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN SECTION IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Plan divides the Claims against and Interests in Debtor into Classes. Certain Claims — in particular, Administrative Claims— remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as described below.

| Class | Description | Status | Voting Status |
|-------|-------------|--------|---------------|
| Class 1 | Allowed Secured Claim of Bank of America | Impaired | Entitled to Vote |
| Class 2 | Judgment Lien Claim of Alvertis Isbell d/b/a Alvert Music | Impaired | Entitled to Vote |
| Class 3 | Allowed General Unsec'd Claims | Impaired | Entitled to Vote |
| Class 4 | Administrative Convenience Class | Impaired | Entitled to Vote |
| Class 5 | Equity Interest Holders | Unimpaired | Not Entitled to Vote |

**Administrative Claims** are expected to be approximately $25,000.00 for MERRILL PA's attorney's fees, inclusive of claims objection hearings, confirmation and disclosure hearings but does not include litigation costs related to adversary proceedings, if any. OUST fees are current and in the budget provided for in Exhibit C.

**The Effective Date** of this Plan is fifteen (15) days after entry of a final, non-appealable order confirming this case.

**B.    Voting Instructions**

The Bankruptcy Code entitles only holders of Impaired Claims or Equity Interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of Claims or Equity Interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of Claims or Equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it. Holders of Claims valued at an unknown amount, including holders of Disputed Claims, shall not be entitled to vote on the Plan, except as provided below.

## II. BACKGROUND OF DEBTOR

DM Records, Inc., also known by its trade name DM Music Group, is an independent music content company founded in 1993 by Mark and David Watson. The company is based in Deerfield Beach, Florida, making its revenues from the licensing of music. Songs it owns or controls (or has in the past) include past gold and multi-platinum hits by Tag Team *"Whoomp! There It Is"* (quadruple platinum), 2 Unlimited *"Get Ready For This"* (platinum), Duice *"Dazzey Duks"* (double platinum), Nikki French *"Total Eclipse of the Heart"* (gold), Prince *"Most Beautiful Girl"* (gold), Los Del Mar *"Marcarena"*, Clarence Carter *"Strokin'"* (gold), MC Breed and DFC *"Ain't No Future in Yo Frontin'"* (gold), and Deadeye Dick *"New Age Girl"* (gold) to name a few. The music group has earned numerous Grammy nominations and Dove Awards. DM Music Group has charted over 150 albums and singles on the Billboard Charts.

4

DM Records, Inc. licenses this music to the full spectrum of revenue opportunities within the entertainment industry, and has placed music in motion pictures, television, video games and national commercial campaigns including: *Elf, High School Reunion,* Hershey's Swoops, *Saved, Shark Tale, Mr. 3000,* ESPN *Who's #1?,* DHL, *Conan O'Brien Show,* Value City, *Shaggy Dog, Path to 9-11, Pepper Dennis,* Midway - Ballerz, Las Vegas, *Married With Children, Entertainment Tonight, Scrubs,* Scion Commercial, Hallmark Mother's Day Commercial, *Martin,* Namco - Wii Cheer, Verizon Fios Commercial, THQ – Battle of the Bands, *Beverly Hills Chihuahua, Longshots, Fanboys, Sister Sister, Custody, South Park – About Last Night, Jimmy Kimmel Show, I Love You Man, Harsh Times, How I Met Your Mother, My Name is Earl, Steve Harvey Show, 8 Mile,* Applebee's Commercial, *America's Funniest Home Videos, The Loop,* International House of Pancakes, *Burn Notice, Love Song For Bobby, American Inventor,* LUVS, Old Navy, Rio, and many more.

## III. THE CHAPTER 11 CASE

### A.   Commencement of the Chapter 11 Case

Prior to the Debtor filing for Chapter 11 bankruptcy protection on November 19, 2015 (the "Petition Date"), the Debtor held substantial intellectual properties in the form of music publishing and performance rights, and enjoyed a successful business earning very substantial revenues from those properties. However a dispute arose with former producer Al Bell as to the nature of the ownership of several of DM Record's primary assets, including *"Whoomp! (There it is)."*  The dispute centered around two of Bell's businesses, Bellmark Records, which was liquidated in a 1997 bankruptcy, and Alvert Music and which of these entities owned the copyright to the recording and which owned the publishing rights.  This dispute was resolved after over ten years of litigation, and resulted in Al Bell obtaining a judgment of over $2.2 Million against the Debtor related to the publishing rights, although the Debtor does still own the copyrights to the recordings. The judgment being what it is, the Company requires a reorganization of its liabilities so that it can successfully emerge from this process without any significant impact either to the Company's operations, or significant impact upon its suppliers and customers.

### B.   Retained Professionals

The Bankruptcy Court is expected to authorize the Debtor to retain certain professionals in connection with the Chapter 11 Case. Specifically, Debtor will be requesting that the Bankruptcy Court approve the retention of, David Lloyd Merrill, Esquire and MERRILL PA as general bankruptcy counsel and Hermann Moskowitz, CPA as accountant.

### C.   The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The bankruptcy court establishes a "bar date" — a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims,

5

the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The deadline for filing proofs of Claims against Debtor, other than claims of governmental units and Administrative Claims, will be 180 days from the date of filing and is anticipated to be May 19, 2016 (the "General Bar Date"). Creditors should not rely upon this estimate and must pay close attention to deadlines as established by the bankruptcy court.

The Debtor has been reviewing, analyzing and resolving Claims on an ongoing basis as part of the claims reconciliation process. Accordingly Allowed Claims may differ significantly from the amounts used for the purposes of Debtor's estimates and the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

## IV. CHAPTER 11 PLAN

THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN. THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A. THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN. SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY. THE PLAN, IF CONFIRMED, WILL BE BINDING ON DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.

### A.   Plan Overview

The Debtor believes that confirmation of the Plan provides the best opportunity for maximizing recoveries for its creditors. The Debtor has selected certain vendor contracts to assume and to reject in order to increase profitability. The Debtor will cure the claims of the vendors whose contracts are being assumed within ninety (90) days from the Effective Date. Moreover, the Debtor believes, and will demonstrate to the Court, that creditors will receive not less than the amount that they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

### B.   Unclassified Claims

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows.

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims. All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed

by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

The Debtor currently owes the Florida Department of Revenue current taxes in the amount of $234.63 in penalties and $1,640.38 in past due taxes which shall be paid in full within six (6) months of the Effective Date.

The Reorganized Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## C. Treatment of Claims and Interests

### 1. Class 1 —Allowed Secured Claim of Bank of America (impaired and entitled to vote to accept or reject the Plan)

(a) *Definition of Class 1 —Allowed Secured Claim of Bank of America*

Class 1 consists of the Allowed Secured Claim of Bank of America Secured by a blanket lien on all assets of the Debtor

(b) *Treatment of Class 1 — Allowed Secured Claim of Bank of America*

On the Effective Date the holder of Class 1 claims will receive $19,866.85 paid in monthly minimum payments of $597.66 representing a three (3) year amortization at 5.25% interest starting no later than in Month 1 of the Plan. Any payments made prior to the Effective Date for adequate protection of Cash Collateral arrangements shall be fully credited to this payment. Class 1 Claims are impaired.

### 2. Class 2 —Judgment Lien Claims of Alvertis Isbell d/b/a/ Alvert Music (impaired and entitled to vote to accept or reject the Plan)

(c) *Definition of Class 2 —Judgment Claims of Alvertis Isbell d/b/a/ Alvert Music*

Class 2 consists of the Judgment Claims of Alvertis Isbell d/b/a Alvert Music including the final judgment and all relevant attorneys' fees and costs obtained by him, secured by a recorded judgment.

7

(d)    *Treatment of Class 2 — Judgment Lien Claims*

On the Effective Date the holder of Class 2 claims will receive $2,263,982.28 paid in monthly minimum payments of $6,460.64 representing a 30 year amortization at 0.18% interest (the Federal post judgment interest rate).  Members of this Class will also receive, solely towards the $2,263,982.28 balance and creditable as principle reductions when paid, a *pro rata* share of 90% of the disposable income of the Debtor paid monthly; "Disposable Income" being defined as gross income, less taxes, and less all reasonable and necessary expenses to operate the business including plan payments for all classes required herein.  "Necessary expenses" also includes a management fee payable to Mark Watson and David Watson in the amount of 30% (cumulative) of monthly gross income of the Debtor.  Class 2 Claims are impaired.

### 3.    Class 3 — Allowed General Unsecured Claims
### (impaired and entitled to vote to accept or reject plan)

(a) *Definition of Class 3 — Allowed General Unsecured claims*

Class 3 consists of the allowed general non-priority unsecured claims as defined pursuant to 11 U.S.C. §502.  The amount of clams may increase or decrease depending on whether or not the Court allows or disallows certain claims or voids the undersecured portions of undersecured liens. **Except as set forth below, Class 3 claim holders who hold claims of less than $20,000.00 have the right to opt into being treated in the same manner as Class 4 claim holders.**

(b) *Treatment of Class 3 Allowed General Unsecured Claims*

On the Effective Date holders of Class 3 claims with claims less than $20,000.00 may opt to be treated either as a part of Class 4 or to receive payments as follows: Class 3 claimants will receive a pro rata share of $37,544.90 paid over three (3) years at 0.18% interest in monthly payments of $1,045.81 beginning the first month after the Effective Date.  **Holders of Class 3 claims that have a claim of under $20,000.00 and that wish to be paid in accordance with the treatment of Class 4 claims may opt out of this class by providing written notice at least five (5) days prior to the Confirmation Date to the Clerk of the Bankruptcy Court at United States Courthouse, 299 East Broward Blvd Room 112, Fort Lauderdale, Florida 33301 AND to Debtor's Counsel (address provided below).  Notices received after the five (5) day period will not be permitted to opt in to Class 4 treatment.**  Class 3 Claims are impaired.

### 4.    Class 4 — Allowed Unsecured Administrative Convenience Class
### (impaired and entitled to vote to accept or reject plan)

(a) *Definition of Class 4 — Allowed Unsecured Administrative Convenience Class*

8

Class 4 consists of the allowed unsecured claims under $1,500.00 or that opt in to this treatment instead of participating in Class 2 in accordance with the procedure set forth in Class 3. The amount of clams may increase or decrease depending on whether or not the Court allows or disallows certain claims.

### (b) Treatment of Class 4 Allowed Unsecured Administrative Convenience Class

Holders of Class 4 claims, which total $2,749.15 (exclusive of members of Class 3 that elect to opt into this Class) will receive a pro rata share of 96% of their claims paid in one payment on the Effective Date. Class 4 Claims are impaired.

### 5. Class 5 — Equity Interest Holders

#### (a) Definition of Class 5 — Equity Interest Holders

Class 5 consists of equity interest holders, which are parties who hold an ownership interest (in other words, an "equity interest") in the Debtor. In this case where the Debtor is a corporation, entities or individuals holding stock are equity interest holders.

#### (b) Treatment of Class 5 Equity Interest Holders

The equity interest holders of the Debtor are the shareholders as disclosed in the Debtor's initial filing of this case and below as Exhibit D. The Plan proposes that the shareholders will retain their interests, subject to applicable provisions of the Bankruptcy Code, and provided that the Plan does not violate the Absolute Priority Rule since all allowed creditors are being paid 100% plus reasonable interest on their claims in accordance with 11 U.S.C. §1129(b)(2)(A) and (B). No plan payments other than full retention of membership interests as set forth in Exhibit D will be made to this Class. Class 5 claims are unimpaired.

## D.   Distributions Under the Plan

Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made month by the Reorganized Debtor to the holder of each Allowed Claim or Allowed Equity Interest at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Distribution Record Date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made on a monthly basis by check drawn on a domestic bank or by wire transfer. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

No payment of Cash less than one hundred dollars ($100.00) shall be made by the Reorganized Debtor to any holder of a Claim unless a request therefor is made in writing to the Reorganized Debtor, or unless the Distribution is a final Distribution.

When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of 1/2 or greater shall be rounded to the next higher whole number and fractions of less than 1/2 shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.02(f) of the Plan.

### 1.    Distributions Withheld for Disputed Claims

On the Initial Distribution Date and each subsequent distribution date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 6.07 of the Plan (the "Disputed Claims Reserve").

### 2.    Property Held in Disputed Claims Reserve

On the Initial Distribution Date and each subsequent distribution date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 6.07 of the Plan (the "Disputed Claims Reserve").

### 3.    Distribution Upon Allowance of Disputed Claims

Except as specifically provided, the holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

### 4.    No Surplus Distributions to Holders of Allowed Claims

Except as specifically provided, to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash or other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed for such Disputed Claim shall vest in the Reorganized Debtor.

### 5.    Expenses of Disputed Claims Reserve

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtor.

## E.    Executory Contracts and Unexpired Leases

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed <u>assumed</u> by the Reorganized Debtor as of the Effective Date, <u>except</u> for any executory contract or unexpired lease (i) which is provided for above or that previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Balloting Deadline; *provided, however,* that the Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected. The Plan Proponents or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby. The listing of a document on the Assumption List shall not constitute an admission by the Plan Proponents or Reorganized Debtor that such document is an executory contract or an unexpired lease or that the Debtor or Reorganized Debtor have any liability thereunder.

### 1.    Assumed Executory Contracts and Unexpired Leases

All of the Debtor's executory contracts or unexpired leases, if any, to the extent they are valid executory contracts or unexpired leases, shall be deemed **assumed** by the Debtor on the Effective Date.

### 2.    Insurance Policies

Each of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim

covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

### 3.   Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VI of the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

### a.   Cure of Defaults

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement. To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtor by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing.  In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtor, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

### b.   Bar Date for Filing Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtor or the Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (1) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order, and (iii) notice of an amendment to the Assumption List. Any Claim not filed within such time will be forever barred from assertion against the Debtor, its

Estate, the Reorganized Debtor and its property. Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan. The Debtor shall reserve funds for claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan.

### c.    Indemnification Obligations

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall be discharged as of the Effective Date of the Plan.

### F. Modification/Revocation of the Plan

Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation.

The Debtor further reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. Such withdrawal or revocation shall not prejudice the any rights of the Debtor. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## G.    Effect of Confirmation

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 1.    Continued Corporate Existence

Reorganized Debtor shall continue to exist after the Effective Date with all powers of a corporation under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law; and. Following the Effective Date, Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan and the Confirmation Order.

2.    **Vesting of Assets**

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of equity interests. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

H.    **Discharge, Exculpation, Injunction, Release and Limitation of Liability**

1.    **Discharge of Debtor**

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and equity interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and equity interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtor, and equity interest in the Debtor shall be satisfied, discharged and released in full, and (ii) **so long as the Plan Payments are made timely and are not more than 30 days delinquent and insofar as such Plan Payments pay 100% of any claims that are due**, all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, or its officers and/or directors, any other or further Claims or equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.  For the sake of clarity, neither the discharge of claims nor the releases set forth in this paragraph shall be extended to any officer, director or employee of the Debtor as of the Petition Date.

2. **Injunction Related to Discharge**

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor, or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or equity

14

interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or equity interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or equity interest.  Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor, and the officers and/or directors of the Reorganized Debtor, **but only insofar as the Payment Plan is not delinquent by more than 30 days.**  For the sake of clarity, the injunction provided in this paragraph shall not apply to any officer, director, or employee of the Debtor as of the Petition Date, but rather as of the Confirmation Date.

### 3.   Injunction Against Interference with the Plan

Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

### 4.   Votes Solicited in Good Faith

The Plan Proponents have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### 5.   Term of Bankruptcy Injunction or Stay

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**I    Retention of Jurisdiction**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)    to determine any and all adversary proceedings, motions,

15

applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c) to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d) to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e) to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g) to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h) to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k) to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l) to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(m) to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(n) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

16

(o)    to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(p)    to hear any other matter not inconsistent with the Code; and

(q)    to enter a final decree closing the Case; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## J. Objections to Claims

Subject to applicable law, from and after the Effective Date, the Reorganized Debtor will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan. Any and all objections to any claim must by filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline. An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtor or the Reorganized Debtor, at any time on or before the applicable claim objection deadline. The failure by the Debtor to object to any Claim or Interest for voting purposes will not be deemed a waiver of the right to object to, or re-examine, any such Claim in whole or in part.

## K. Transfers Within Two Years Prior to Petition

The Reorganized Debtor shall retain any and all claims against third-parties, including all claims arising under Chapter 5 of the Bankruptcy Code, including any and all avoidance actions or actions based on fraudulent or preferential transfers that are not dealt with under this Plan.

## L. Miscellaneous Provisions

### 1.    Post-Confirmation Date Service List

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Entities.

### 2.    Notice of No Environmental Issues

The Debtor has no open or pending environmental issues outstanding.

17

## V. <u>CONFIRMATION OF THE PLAN</u>

**A.      Solicitation of Votes**

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Classes above listed as impaired are impaired and the holders of Allowed Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan. An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

**B.      Confirmation Hearing**

The Bankruptcy Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan before the Honorable Raymond B. Ray, Judge for the United States Bankruptcy Court for the Southern District of Florida, located at the United States Bankruptcy Court, United States Courthouse, 299 East Broward Blvd, Fort Lauderdale, Florida 33301. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. The Bankruptcy Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to Confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim. Any such objection must be filed with the Court and serviced so that it is received by the Bankruptcy Court and the following parties on or before the deadline set by the Bankruptcy Court:

MERRILL PA
Attn: David Lloyd Merrill, Esq.
Trump Plaza Office Center        -and-
525 S. Flagler Drive, Fifth Floor
West Palm Beach, Florida 33401
Phone: +1.561.877.1111

Office of the U.S. Trustee
51 SW First Avenue, Room 1204
Miami, FL 33130
Phone: (305) 536-7285

**C.  Confirmation Standards**

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims or interests, such class has

accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims or interests which is impaired under the plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. As set forth in more detail in the following section, the Plan Proponents believe that the Plan satisfies all of the requirements for confirmation.

## VI. FUNDING AND FEASIBILITY OF THE PLAN

### A.  Funding of the Plan

Funds to be used to make cash payments under the Plan shall derive from operations of the Debtor.  Please see the Feasibility Section as well as Exhibit C's projections for more information relating to the source of operational funds.

### B.  Best Interests Test and Liquidation Analysis

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Plan requires that each holder of an Allowed Claim or Equity Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. To determine what holders of Claims and Equity Interests of each impaired Class would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a Chapter 7 liquidation case and the assets were liquidated by a Trustee in bankruptcy. The cash amount that would be available for satisfaction of Claims and Equity Interests would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtor, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the liquidation case. Such cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative expenses and priority claims that might result from the termination of the Debtor's business and the use of chapter 7 for the purposes of liquidation.  The cost of liquidation under Chapter 7 would include expenses relating to the wind-down of the business, including computer expenses, consulting expenses, maintenance and repair expenses, plant operations expenses, office expenses, marketing expenses, marketing expenses, payroll expenses and license fees; the fees payable to the Chapter 7 trustee, as well as those fees that might be payable to other professionals that such a trustee might engage. In addition, claims would arise by reason of the breach or rejection of obligations incurred, and leases and Executory Contracts assumed or entered into by the Debtor during the pendency of this Chapter 11 case. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 case, including any unpaid

19

expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

To determine if the Plan is in the best interests of each impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtor's unencumbered assets and properties, after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims and Equity Interests under the Plan.

After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 case, including i) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, ii) the erosion in value of assets in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" environment that would prevail, and iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Plan Proponents have determined that confirmation of the Plan will provide each holder of an Allowed Claim or Equity Interest with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtors under Chapter 7.

The Liquidation Analysis is attached hereto as Exhibit "B". The information set forth in Exhibit B provides a summary of the liquidation values of the Debtor's assets, assuming a Chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtor's Estate. Reference should be made to the Liquidation Analysis for a complete discussion.

The Liquidation Analysis was prepared by the Debtor and reflects the Debtor's best estimates of the information set forth therein. However, the Liquidation Analysis includes a number of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtor was, in fact, to undergo such a liquidation. It should also be noted that the Debtor's plan proposes to pay 100% of all allowed claims, but could not, by definition and in accordance with the expenses described above, occur in a liquidation scenario.

The Plan Proponent believes that the value of the property offered to holders of under the Plan is greater than the present value of the distributions from the proceeds of a liquidation of the Debtor's unencumbered assets and properties when including the extraordinary expense and expertise required to extract the same. However, the Plan Proponent's reliance on the Debtors' Liquidation Analysis herein should not be construed as an acknowledgment of the Plan Proponent that either the total figure arrived at or the allocation of claims status to various Insider Claims is appropriate or

20

necessary. The Plan Proponent reserves the right to submit an amended liquidation analysis prior to the Confirmation Hearing.

## C.  Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. For purposes of determining whether the Plan meets this requirement, the Plan Proponents have analyzed their ability to meet their financial obligations as contemplated thereunder. As part of this analysis, the Plan Proponent has prepared projections set forth in Exhibit "C" hereto, which the Plan Proponent believes indicates that it will be able to make all payments required to be made pursuant to the Plan. Moreover, the Debtor is cash flow positive and maintain a substantial income for itself for over 22 years.  Accordingly, the Plan Proponent asserts that it is able to perform all of its obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## VII. <u>ALTERNATIVES TO THE PLAN</u>

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed and consummated, the alternatives to the Plan include i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; ii) an alternative plan of reorganization; or iii) dismissal of the Chapter 11 Case leaving creditors and interest holders to pursue available non-bankruptcy remedies.

### 1.    Liquidation Under Chapter 7

If no plan is confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtor's assets for distribution in accordance with the priorities established by Chapter 7. As discussed previously, the Plan Proponents believe that liquidation under Chapter 7 would result in smaller distributions being made to Creditors than those provided for in the Plan because i) the Debtor's assets would have to be sold or otherwise disposed of in a forced sale situation over a short period of time, ii) additional administrative expenses would be involved in the appointment of a trustee, and iii) additional expenses and claims, some of which would be entitled to priority, would be generated during the liquidation and from the rejection of leases and other Executory Contracts in connection with a cessation of the Debtor's operations.

### 2.    Alternative Plan of Reorganization

If the Plan is not confirmed, another party in interest could attempt to formulate an alternative plan.  Such a plan might involve either a reorganization and continuation

21

of the Debtor's businesses, or an orderly liquidation of their assets.

### 3.  Dismissal of the Chapter 11 Case

If the Chapter 11 Case is dismissed, Creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against Debtor. However, in that event, Creditors would be faced with the costs and difficulties of attempting to collect claims from either a non-operating entity or an entity in foreclosure from its Secured Creditors.

<div align="center">

**CONCLUSION**

</div>

For all the reasons set forth in the Disclosure Statement, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives. The Plan provides a 100% distribution to all Allowed Creditors in all Classes except the Administrative Convenience Class. Consequently, the Debtor urges all eligible holders of Impaired Claims and Interests to vote to accept the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Bankruptcy Court.

DM RECORDS, INC.

BY: _____

Mark Watson, its
President


**MERRILL PA**


By: /s/ David Lloyd Merrill, Esq.
        David Lloyd Merrill, Esq.
        Trump Plaza Office Center
        525 South Flagler Drive, Fifth Floor
        West Palm Beach, Florida 33401
        Phone: +1.561.877.1111
        **Attorneys for DM Records, Inc.**

<div align="center">

22

</div>

## EXHIBIT A – THE PLAN

      **Please see Plan which has been attached as Exhibit A of the CM/ECF filing of this document.**

## EXHIBIT B – LIQUIDATION ANALYSIS

       The Plan and this Disclosure Statement provide for a 100% payout to all allowed creditors.  Accordingly, the Liquidation Analysis is moot and not included.

24

## Exhibit C – PROJECTIONS

Please see the Projections which have been attached as Exhibit C of the CM/ECF filing of this document.

## Exhibit D – Equity Security Holders

| Name | % Ownership | Name | % Ownership |
|------|-------------|------|-------------|
| Mark Watson | 50.0 | David Watson | 50.0 |