UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

IN RE:

DM RECORDS, INC.,                                  Case No: 15-30368-RBR

    Debtor.                                        Chapter 11
_____/

**EXPEDITED MOTION FOR AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 *NUNC PRO TUNC* TO PETITION DATE AND FOR AN ADDITIONAL NINETY (90) DAYS**

    The Debtor-in-Possession, DM RECORDS, INC. ("Debtor"), by and through its undersigned proposed counsel, and files this *Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. §363 to Petition Date and for an Additional Ninety (90) Days* ("Motion") and states:

## JURISDICTION

    1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

    2.    The statutory predicate for the relief requested is 11 U.S.C. §§105 and 363 and Fed.R.Civ.P. Rule 4001(d)(1)(D).

    3.    **Statement relating to expedited relief required by Local Rule 9075-1: The basis for requesting expedited relief is that the Debtor needs the continued use of cash collateral to operate its business. Since the petition date, no cash collateral has been used.**

MERRILL PA

## BACKGROUND

4. On November 19, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Pursuant to 11 U.S.C. §§1107(a) and 1108, the Debtor has been and is operating its business and managing its affairs as a debtor-in-possession since that date.

5. The Debtor operates as an independent music content company.

6. On or about December 29, 1999, the Debtor executed and delivered a Corporate Resolution to Borrow in the amount of $250,000.00 in favor of Bank of America, N.A. dba NationsBank, N.A. (the "Creditor"). A UCC-1 Financial Statement was filed on January 3, 2000, on behalf of the Creditor, who retains an interest in Debtor's cash collateral.

7. The Debtor has filed a Plan in this case and proposed to pay the Creditor as follows:

> On the Effective Date the holder of Class 1 claims will receive $19,866.85 paid in monthly minimum payments of $597.66 representing a three (3) year amortization at 5.25% interest starting no later than in Month 1 of the Plan. Any payments made prior to the Effective Date for adequate protection of Cash Collateral arrangements shall be fully credited to this payment.

## RELIEF REQUESTED

8. By this Motion, the Debtor seeks the entry of an Order authorizing the use of cash collateral pursuant to 11 U.S.C. §363 *nunc pro tunc* to petition date and for an additional ninety (90) days, Fed.R.Bankr.P. Rule 4001(b)(2) and Local Rule 4001-3; setting the time for a final hearing and objection deadline for this Motion; and grant such other and further relief as is just and proper.

9. As set forth in the budget, incorporated herein and attached hereto as *Exhibit "A"*, the Debtor requires the use of cash collateral to, among other things, fund all necessary operating expenses of the Debtor's business as well as pay for regular and ordinary expenses of the Debtor.

10. The Debtor will suffer immediate and irreparable harm if it is not authorized to use the cash collateral to fund the items set forth in the budget. Absent such authorization, the Debtor will not be able to maintain and protect its business and property and continue operations. Furthermore, the use of cash collateral is also required in order to make adequate protection payments to the secured creditor.

CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

11. The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code ("Code"), which in pertinent part provides that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice of a hearing, and may use property of the estate in the ordinary course of business without notice and a hearing. See 11 U.S.C. §363(c)(1).

A debtor-in-possession has all the rights and powers of a trustee with respect to the property of the estate, including the right to use property of the estate in compliance with section 363 of the Code. See 11 U.S.C. §1107(a).

12. When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of the estate in the ordinary course of its business, but is absolutely prohibited from using cash collateral absent consent of the secured creditor or court authorization. *In re: Kahn*, 86 B.R. 506 (Bankr. W.D.Mich. 1988); *In re:*

*Westport-Sandpiper Assoc. Ltd. Partnership*, 116 B.R. 355 (Bankr. D.Conn. 1990) (Debtor may not use cash collateral unless entity that has interest in it consents or debtor proves that interest of that entity is adequately protected).

13. "Cash Collateral" is defined by the Code as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Any cash collateral generated by the Debtor may constitute cash collateral of the alleged secured creditors.  The Debtor reserves the right to challenge the validity, priority and extent of any alleged secured creditors' lien against the Debtor's assets.

14. The Debtor proposes to use the cash collateral.  The Debtor also requests that it also be authorized as follows: (1) to exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (2) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total budget.

<u>APPLICABLE AUTHORITY FOR RELIEF REQUESTED</u>

A. **The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtor Has Proposed Providing Sufficient Adequate Protection to the Secured Creditor**.

15. The Code does not explicitly define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property.  See 11 U.S.C. §361 *and see*, *In re: Potvin Lumber Company, Inc.,* 24 B.R. 54 (Bankr. D.Vt. 1982) (ordering that the debtor could use cash collateral,

and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness); *see also In re: Conventry Commons Associates*, 149 B.R. 109 (Bankr. E.D.Mich. 1992); *In re: R.T.C. v. Swedeland Development Group, Inc.,* 16 F.3d 552, 564 (3d Cir. 1994).

16. Adequate protection is to be determined on a case-by-case factual analysis. *Mbank Dallas, N.A. v. O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re: Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S.Rep.No. 95-989, 95th Cong., 2d Sess. 54 (1978). For example, the *O'Connor* court held that "[i]n order to encourage the debtor's efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1396. *See also, In re: Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that the granting of a replacement lien provided adequate protection).

17. Adequate protection is meant to ensure that the secured creditor receives the value for which it originally bargained for pre-petition. *Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) citing *O'Connor* at 1396-97. Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value during the interim between the filing and the confirmation. *In re: Arriens,* 25 B.R. 79, 81 (Bankr. D. Or. 1982). The focus of the requirement is to protect secured creditors from diminution in value during the use period. *See In re: Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re: Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re: Ledgemere Land Corp.,* 116 B.R. 338, 343 (Bankr. D.Mass. 1990).

18. Adequate protection that is proposed to be provided to the secured creditor

includes regular payments based upon the Plan as proposed by the Debtor.

19. The Debtor's requested use of cash collateral and the protections afforded to the secured creditor herein are reasonable, appropriate and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the secured creditor's alleged collateral.

B. **The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value in Its- Property Which Will Inure to the Benefit of the Secured Creditor and to Other Creditors**.

20. The continued operation of the Debtor's business will preserve the going concern value of its property, enable the Debtor to capitalize on that value through a reorganization strategy and ultimately facilitate the Debtor's ability to confirm a Chapter 11 plan. However, if the Debtor is not allowed to use cash collateral, not only will it not be able to operate its business, but it will be a harbinger to losing its property, which is a critical component of the Debtor's reorganization.

21. The Debtor will use the cash collateral during the interim period to pay the Debtor's expenses of administration such as US Trustee fees, intellectual property payments and operating expenses in order to maintain its business.

22. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving a business of the debtor as a going concern. As stated by the court is *In re: George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984):

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild. Without the availability of cash to meet daily operating expenses, such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated. Id. At 1019.

23. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re: Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtors' continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business. *Id.* at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assoc.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of property); *In re: Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); *In re: Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D. N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize the value for all creditors); *In re: Karl A. Neise, Inc.*, 156 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor, debtors can use cash collateral in the normal operation of their business).

24. If the Debtor cannot use cash collateral, it will be forced to not maintain its operations. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of the secured creditor and all other creditors.

25. Courts in the District have granted relief similar to the relief sought in this

Motion in recent Chapter 11 cases. *See e.g., In re: TOUSA, Inc.*, Case No.: 08-10928, [DE # 113] (Bankr. S.D. Fla. Jan. 31, 2008); *In re: All American Semiconductor, Inc.*, Case No.: 07-12963 (Bankr. S.D. Fla. May 21, 2007) (authorizing the use of cash collateral in accordance with the terms of the DIP credit documents and the approved budget for DIP financing); *In re: ITG Vegas, Inc.,* Case No.: 06-16350, [DE #20] (Bankr. S.D.Fla. Dec. 7, 2006).

26. The Debtor believes that the use of cash collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the secured creditor herein. The combination of (1) the Debtor's ability to preserve the going concern value of the property and business with the use of cash collateral; and (2) providing the secured creditor with the other protections set forth herein, adequately protects its alleged secured position under §§362(2) and (3). For all of the reasons stated above, this Court's approval of the Debtor's use of cash collateral is proper herein.

27. The Debtor believes that the approval of this Motion is in the best interests of the Debtor, its creditors and its bankruptcy estate because it will enable the Debtor to (1) continue the orderly operation of its business and avoid an immediate shutdown of operations; (2) meet its obligations for necessary ordinary course expenditures and other operating and personal expenses; and (3) make such payments as may be authorized or required under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor's estate.

WHEREFORE the Debtor respectfully requests that this Court enter an order authorizing the use of cash collateral *nunc pro tunc* to petition date and for an additional ninety (90) days in accordance with the attached budget and provide related adequate

protection; and granting such other and further relief as is just and proper.

## CERTIFICATIONS

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically or U.S. Mail to all interested parties attached on this 20th day of November, 2015.

        Respectfully submitted,

        **MERRILL PA**

        By:    */s/ David Lloyd Merrill*
              DAVID LLOYD MERRILL, Esq.
              Florida Bar No. 99155
              Trump Plaza
              525 S Flagler Drive, Fifth Floor
              West Palm Beach, FL 33401
              (o) +1.561.877.1111
              dlmerrill@merrillpa.com
              Attorneys for Debtor